UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| YOEL ANTONIO GIL FIGUEROA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 2:26-cv-00047-JPH-MJD |
| | ) |
| BRISON SWEARINGEN, | ) |
| SAMUEL OLSON, | ) |
| TODD M. LYONS, | ) |
| KRISTI NOEM, | ) |
| PAM BONDI, | ) |
| | ) |
| Respondents. | ) |

**ORDER GRANTING IN PART
PETITION FOR WRIT OF HABEAS CORPUS**

Yoel Antonio Gil Figueroa seeks a writ of habeas corpus ordering his release from U.S. Immigration and Customs Enforcement ("ICE") detention. Dkt. 1. For the reasons described below, the Court **GRANTS IN PART** Mr. Gil Figueroa's habeas petition. By **5:00pm on February 6, 2026**, Respondents must either (1) revoke Mr. Gil Figueroa's release under the prescribed regulations or (2) release him from detention.

**I.    Background**

The material facts are undisputed.

Mr. Gil Figueroa is a citizen of Venezuela. In October of 2022, he entered the United States through Mexico. Dkt. 6-1 at 1 (ERO Narrative). On October 3, 2022, immigration agents apprehended Mr. Gil Figueroa for unlawful entry but released him "with I-94 as an alternate to detention as a condition of parole." *Id.*

1

at 2. Mr. Gil Figueroa was ordered to report to the Oklahoma ICE Office "within 60 days or face removal." *Id.* at 3–6.

On December 2, 2022, Mr. Gil Figueroa reported to the ICE Office in Oklahoma. Federal agents served Mr. Gil Figueroa with a Warrant for Arrest of Alien (Form I-200), which authorized the agent to take him into custody under 8 U.S.C. § 1226. *Id.* at 11. Federal agents also served Mr. Gil Figueroa with a Notice to Appear, placing him in removal proceedings under 8 U.S.C. § 1229a. Dkt. 1-2 at 1. The Notice designated Mr. Gil Figueroa as an "arriving alien" and charged him as "subject to removal" per § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA") ("an immigrant, who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa . . . ."). *Id.* That same day, he was released on his own recognizance. Dkt. 6-1 at 12–18. The Order of Release on Recognizance" stated, "Pursuant to the authority contained in [8 U.S.C. § 1226] and part 236 of title 8. Code of Federal Regulations, I have determined that, pending a final administrative determination in your case," Mr. Gil Figueroa will be "released" on his own recognizance. *Id.* at 12 (as written); *see also id.* at 13 ("You have been arrested and placed in removal proceedings. In accordance with [8 U.S.C. § 1226] and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance provided you comply with the following conditions[.]").

In February of 2024, Mr. Gil Figueroa received employment authorization, which is valid through February of 2029. Dkt. 1-5 (I-797 Notice of Action). Mr.

Gil Figueroa also has a pending application for asylum and temporary protected status ("TPS"). Dkt. 1 ¶ 18.

On January 21, 2026, Mr. Gil Figueroa reported to the ICE Field Office in Illinois for an appointment. Dkt. 6-1 at 20. During his appointment, an ICE agent arrested Mr. Gil Figueroa pursuant to a Warrant for Arrest of Alien (Form I-200) and served him with a "Notice of Custody Determination" (Form I-286), and a Notice to the EOIR (Form I-830E). *Id.* at 20–21.

Mr. Gil Figueroa was subsequently transferred to Clay County Jail in Brazil, Indiana, where he remains detained. Dkt. 1 ¶ 21. The record does not show that Mr. Gil Figueroa moved for or has been given a custody re-determination hearing.

## II. Discussion

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Mr. Gil Figueroa claims that his current detention violates the Due Process Clause of the Fifth Amendment (Count I) and violates 5 U.S.C. § 706(2)(A) of the Administrative Procedure Act ("APA"). *Id.*, ¶¶ 39–44. Respondents argue that Mr. Gil Figueroa's petition is premature; that he is lawfully detained pursuant to 8 U.S.C. § 1225(b)(2)(A); that, in the alternative, he is lawfully detained pursuant to 8 U.S.C. § 1226(a); and that his detention is constitutional. Dkt. 6.

The Court finds that Mr. Gil Figueroa's detention is unlawful because the revocation of his previous release violates the APA. Because Mr. Gil Figueroa is

3

entitled to habeas corpus relief on these grounds, the Court does not address the constitutional arguments.

### A. Exhaustion

Respondents argue that Mr. Gil Figueroa's petition is premature because he has not moved for a bond hearing. Dkt. 6 at 6. Mr. Gil Figueroa argues that it is futile to attempt to exhaust his administrative remedies because the Bureau of Immigration Appeals ("BIA") has already directly addressed the issue of his statutory qualification for bond in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). Dkt. 10 at 2–3. Furthermore, Mr. Gil Figueroa raises constitutional issues related to the revocation of his release, and the BIA does not have jurisdiction to decide his constitutional claims. *Id.* at 3.

Respondents do not cite a statute requiring Mr. Gil Figueroa to request a bond hearing before seeking habeas relief. In the absence of a statutory mandate, the Seventh Circuit holds that "sound judicial discretion governs" whether courts should require exhaustion. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). In similar circumstances, other district courts determined that the petitioner was not required to exhaust administrative remedies by seeking a bond hearing before an immigration judge because doing so would be futile given *Matter of Yajure Hurtado*'s holding, which is binding on immigration judges. *Valencia v. Noem*, No. 25-CV-12829, 2025 WL 3042520, at *2 (N.D. Ill. Oct. 31, 2025) ("Requiring Petitioner to exhaust his administrative remedies would be futile because Respondents' position is that he is *statutorily precluded* from obtaining the relief he seeks. The Court declines to require exhaustion because

4

[t]here is nothing to indicate the BIA would change its position [once] the BIA has predetermined the statutory issue.") (internal quotes and citations omitted); *see also Ceballos Ortiz v. Olson, et al.*, 2:25-cv-00548-MPB-MJD, dkt. 18 at 2-3, 6-9 (S.D. Ind. Nov. 19, 2025) (finding exhaustion would be futile, proceeding to merits, and ordering that petitioner be provided a bond hearing). The Court finds the reasoning applied in these cases persuasive and concludes that Mr. Gil Figueroa was not required to exhaust administrative remedies because doing so would be futile.

### B. 8 U.S.C. §§ 1226 and 1225

Mr. Gil Figueroa argues that the revocation of his release violates 8 U.S.C. § 1226(b) and 8 C.F.R. § 1236.1(c)(9). This implies that Mr. Gil Figueroa's detention is governed by the discretionary detention provision in 8 U.S.C. § 1226(a). Respondents contend that Mr. Gil Figueroa is subject to mandatory detention under § 1225(b)(2)(A).

Two statutes govern detention during a noncitizen's removal proceedings: 8 U.S.C. § 1226 and § 1225. While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full

removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011).

> Section 1226(a) provides:
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States . . . . [T]he Attorney General—
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>
> > (A) bond . . . ; or
> >
> > (B) conditional parole . . . .

8 U.S.C. § 1226(a). An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers shall order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." Section 1225(b)(2)(A) provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is *not clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

**C. Mr. Gil Figueroa's Detention is Governed by 8 U.S.C. § 1226(a)**

Respondents argue that Mr. Gil Figueroa is subject to the broader "catchall provision" in § 1225(b)(2)(A) because he is an "applicant for admission" according to § 1225(a)(1), who is not covered by the narrower provisions for "arriving aliens"

7

in § 1225(b)(1), and who is "not clearly and beyond doubt entitled to be admitted." Dkt. 6 at 8–10.

The Court has previously determined that considering § 1225 as a whole, the most natural meaning is that it applies to "arriving" noncitizens attempting to enter the United States at or near the border rather than undocumented aliens like Mr. Gil Figueroa who have lived in the interior of the United States for years. *See Alejandro v. Olson*, No. 1:25-cv-02027-JPH-MKK, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025); *Mendoza-Loera v. Warden, Clay Co. Jail*, No. 2:25-cv-00554-JPH-MJD, dkt. 16 at 8–11 (S.D. Ind. Nov. 21, 2025); *Corzo Martinez v. Olson et al.*, No. 2:26-cv-00003-JPH-MKK, Dkt. 13 (S.D. Ind. January 10, 2026). As the Court previously explained, Respondents' interpretation of the statute (1) disregards the plain meaning of § 1225(b)(2)(A); (2) disregards the relationship between §§ 1225 and 1226; (3) would render a recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice. *Alejandro*, 2025 WL 2896348, at *14–19; *Jackson Rizo v. Swearingen*, Case No. 2:26-cv-00026-JPH-MKK (S.D. Ind. January 23, 2026). Respondents have cited no binding precedent to the contrary. And as the Seventh Circuit recently explained, "seeking admission" under § 1225(b)(2)(A) cannot be read as synonymous with "applicant for admission." *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (citing *United*

*States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023)) ("[E]very clause and word of a statute should have meaning.")).[1]

In addition, except for detaining Mr. Gil Figueroa without considering his eligibility for bond for the last two weeks, the Respondents' treatment of Mr. Gil Figueroa has been entirely consistent with their description of § 1226. *See* dkt. 6 at 10–11. In October of 2022, federal agents apprehended Mr. Gil Figueroa near the U.S.-Mexico border and then released him on a 60-day parole. Dkt. 6-1 at 7. Mr. Gil Figueroa reported to the designated ICE Office in Oklahoma after the parole expired on December 2. There, he was apprehended once again pursuant to a warrant that explicitly authorized the federal agent to take him into custody under § 1226. *Id.* at 11. That same day, DHS initiated full removal proceedings and released Mr. Gil Figueroa on his own recognizance, serving him with an order that explicitly authorized his release pursuant to § 1226 and its corresponding regulations. *Id.* at 12–18. In January of 2026, Mr. Gil Figueroa was once again arrested with a warrant that explicitly authorized his detention under § 1226.

---

[1] The Court cites *Castañon-Nava* as persuasive precedent. *See Morales Perez v. Walsh*, 2026 WL 44777, at *2 (N.D. Ill. Jan. 7, 2026) ("At a minimum, *Castañon-Nava* carries substantial persuasive weight. It is true that *Castañon-Nava* cautioned that its decision was limited to 'the current record.' — F.4th —, 2025 WL 3552514, at *8. But the statutory-interpretation issue that the opinion resolved was one purely of *law*, and any adjustment to the *factual* record going forward would not likely alter the legal conclusion. In any event, as explained below, the Court agrees with *Castañon-Nava*'s holding on the legal question, so there is no need here to definitively decide whether it is binding precedent or something short of that.").

These facts are quite different from the facts presented in *Cruz Rodriguez v. Olson*, No. 1:25-cv-12961, 2025 WL 3672856 (N.D. Ill. Dec. 17, 2025), withdrawn & superseded, 2026 WL 63613 (N.D. Ill. Jan. 8, 2026), which Respondents briefly reference in support of their position that Section 1225 applies to Mr. Gil Figueroa. Unlike Mr. Cruz Rodriguez, who had no immigration record and was subjected to a warrantless arrest, Mr. Gil Figueroa was released after his initial encounter with federal immigration officials in both October and December of 2022 and then most recently arrested pursuant to a warrant. *Cruz Rodriguez* therefore does not apply here.

The government's treatment of Mr. Gil Figueroa further demonstrates that his detention is pursuant to § 1226. The government cannot now maintain that Mr. Gil Figueroa is subject to § 1225(b)(2)(A) and therefore categorically ineligible for discretionary release. *Singh v. Bondi*, No. 1:25-cv-02101-SEB-TAB, 2025 WL 3029524, at *6 (S.D. Ind. Oct. 30, 2025) (citing *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025); *Kennedy v. Kijakazi*, No. 22-2258, 2023 WL 1990303, at *3 (7th Cir. Feb. 14, 2023)); *Valencia Zapata v. Kaiser*, No. 25-CV-07492-RFL, 2025 WL 2741654, at *9 (N.D. Cal. Sept. 26, 2025) ("[T]he government cannot switch tracks and subject Petitioners to mandatory detention under section 1225(b)(2) when the government has instead placed Petitioners in removal proceedings under section 1229a and released them on their own recognizance under section 1226(a)."); *Fornalik v. Perryman*, 223 F.3d 523, 530 (7th Cir. 2000)).

In the alternative, Respondents argue that Mr. Gil Figueroa is being lawfully detained under § 1226(a) "because he will have the opportunity to receive a hearing before an Immigration Judge." Dkt. 6 at 13. Respondents therefore argue that this Court does not have jurisdiction over this matter due to § 1226(e), which states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

*Id.* (quoting 8 U.S.C. § 1226(e)).

There is no evidence, however, that Mr. Gil Figueroa had or will have a *bond* hearing before an immigration judge. In fact, Respondents contend that Mr. Gil Figueroa is ineligible for a bond hearing. Because an immigration judge has not "denied" or "revoked" bond, § 1226(e) does not have any bearing on this petition.

The Court concludes that Mr. Gil Figueroa's current detention is governed by § 1226 and the Court has jurisdiction over his petition.[2] The Court now turns to whether the Respondents violated the regulations that apply to revocation of Mr. Gil Figueroa's Order of Release on Recognizance.

---

[2] The Court incorporates by reference its more fulsome statutory interpretation of 8 U.S.C. §§ 1226 and 1225 and corresponding analysis of the circumstances to which those statutes apply as set forth in *Corzo Martinez v. Olson et al.*, Case No. 2:26-cv-00003-JPH-MKK, Dkt. 13 (S.D. Ind. Jan. 10, 2026), and *Jackson Rizo v. Swearingen*, Case No. 2:26-cv-00026-JPH-MKK, Dkt. 13 (S.D. Ind. January 23, 2026).

### D. 5 U.S.C. § 706(2)(A)

The APA requires federal courts to "hold unlawful and set aside agency action" that is found to be:

- A. arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
- B. contrary to constitutional right, power, privilege, or immunity; [or]
- C. in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

5 U.S.C. § 706(2). "[C]ourts have consistently demanded governmental compliance with administrative regulations designed to safeguard individual interests." *Martinez Camargo v. I.N.S.*, 282 F.3d 487, 491 (7th Cir. 2002); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954) ("We think the petition for habeas corpus charges the Attorney General with precisely what the regulations forbid him to do: dictating the Board's decision. [W]e object to the Board's alleged failure to exercise its own discretion, contrary to existing valid regulations."). ICE is "required to follow [its] own regulations . . . including those that govern exercises of an agency's discretion." *Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021).

Mr. Gil Figueroa argues that Respondents violated the APA by "categorically detaining [him] with no basis or notice, and without consideration of his individualized facts and circumstances." Dkt. 1 ¶ 42. Furthermore, "there have been no changes to [Mr. Gil Figueroa's] facts or circumstances since the agency made its initial custody determinations that support the revocation of his

12

release or parole from custody." *Id.* ¶ 43. Respondents do not address this argument.

Mr. Gil Figueroa argues that ICE failed to follow 8 U.S.C. § 1226(b) and 8 C.F.R. § 1236.1(c)(9) when agents re-detained him on January 21, 2026. *Id.* Section 1226(b) provides that "[t]he Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." Section 1236.1(c)(9) then provides:

> When an alien, who having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained. If detained, unless a breach has occurred, any outstanding bond shall be revoked and cancelled.

Here, Respondents do not identify who from ICE revoked Mr. Gil Figueroa's previous order of release, leading to his arrest on January 21, 2026. The Court is therefore unable to verify from the record whether an authorized official revoked his release as required by applicable regulations. *See* dkt. 6-1 at 20 – 21; 8 C.F.R. § 1236.1(c)(9).

The Respondents have not answered this argument. Accordingly, they have waived any argument that different rules governed the revocation of Mr. Gil Figueroa's release or that a designated official authorized the revocation. "Failure to respond to an argument . . . results in waiver." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010); *see also N.A.L.R. v. Bondi*, No. 4:25-CV-00192-SEB-KMB, 2025 WL 2987239, at *2 (S.D. Ind. Oct. 23, 2025) (finding that "[t]he

13

government has proffered no evidence or argument" that an official with authority revoked the petitioner's order of supervised release and thus, "any argument that NALR is ineligible to receive habeas corpus relief on this basis has been waived").

The undisputed record demonstrates that Mr. Gil Figueroa was released on his own recognizance on December 2, 2022, and there is no evidence that his release was revoked by an authorized official according to § 1236.1(c)(9). Applying the APA and the *Accardi* doctrine, the revocation of Mr. Gil Figueroa's release was contrary to law.

### III.    Scope of Relief

Mr. Gil Figueroa is entitled to habeas relief because the revocation of his release and his subsequent detention without opportunity for a bond hearing violate ". . . the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The remaining question is the remedy, which should be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). Mr. Gil Figueroa requests immediate release from custody. Dkt. 1 at 12–13.[3]

Immediate release is the customary remedy in habeas proceedings. *See Dep't of Homeland Security v. Thursaissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). However, the Court finds that it would

---

[3] Mr. Gil Figueroa seeks additional prospective injunctive relief that the Court declines to consider because it exceeds the scope of the habeas petition.

14

not be in the interests of justice to order Mr. Gil Figueroa's immediate release because the applicable statutes and regulations vest the government with broad authority to revoke his release and detain him. *See* 8 U.S.C. § 1226(b) ("The Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien."); 8 C.F.R. § 1236.1(c)(9) (. . . such release may be revoked at any time in the discretion of the . . . ). "Courts have repeatedly recognized the importance of process, particularly where, as here, a person's freedom hangs in the balance." *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 157 (W.D.N.Y. 2025) (citing *Accardi*, 347 U.S. at 268); *see also Khabazha v. United States Immigr. & Customs Enf't*, 2025 WL 3281514, at *7 (S.D.N.Y. Nov. 25, 2025) ("Respondents plainly enjoy significant discretion under Section 1226, but they still must follow [their] own regulations [and] procedures when they deprive a noncitizen of his liberty.") (internal citation and quotation omitted).

    Thus, Respondents are ordered to follow the procedures prescribed by 8 U.S.C. § 1226 and 8 C.F.R. § 1236.1 and, if unable to do so in the expeditious manner required, to release him. [4]

---

[4] Were the Court to order Mr. Gil Figueroa's immediate release, Respondents could of course take the proper steps to revoke his release and redetain him. However, the more sensible approach is for the Court to order Respondents to comply with its regulations and release him if it cannot otherwise act in a timely manner. *See Waller*, 467 U.S. at 50 ("If, after a new suppression hearing, essentially the same evidence is suppressed, a new trial presumably would be a windfall for the defendant, and not in the public interest."); *see also Jackson v. Denno*, 378 U.S. 368, 393–94 (1964) ("New York . . . should first provide Jackson with that which he has not yet had and to which he is constitutionally entitled—an adequate evidentiary hearing productive of reliable results concerning the voluntariness of his confession. It does not follow, however, that Jackson is automatically entitled to a complete new trial including a retrial of the issue of guilt

### IV. Conclusion

The Court **GRANTS the petition in part** to the extent that no later than **5:00 p.m. on February 6, 2026**, Respondents must file documentation with the Court showing that an official authorized under 8 C.F.R. § 1236.1(c)(9) has taken the necessary steps to revoke Mr. Gil Figueroa's Order of Release on Recognizance as prescribed by 8 U.S.C. § 1226 and 8 C.F.R. § 1236.1. If Respondents are unable to promptly take such action, they are ordered to release him from detention, subject to the most recent order of release.

No final judgment shall issue at this time.

**SO ORDERED.**

Date: 2/4/2026

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Rachel Dever
Church Church Hittle and Antrim
rdever@cchalaw.com

Afshan Jabeen Khan
Law Office of Afshan J Khan
ajkhanesq@gmail.com

---

or innocence."); *Barrios v. Ripa*, No. 1:25-CV-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025) ("Even if Petitioner could establish that Respondents violated their OSUP revocation procedures, the Court finds that Petitioner's release from detention . . . would not be appropriate. . . . Instead, the Court could order Respondents to provide Petitioner with a new Notice signed by the appropriate official and afford Petitioner a more robust interview.").

Liberty L. Roberts
CHURCH CHURCH HITTLE & ANTRIM (Noblesville)
lroberts@cchalaw.com

Shelese M. Woods
DOJ-USAO
shelese.woods@usdoj.gov